WIDELL, Respondent, v. HOLY TRINITY CATHOLIC CHURCH, Appellant.

*March 6—April 30, 1963.*

For the appellant there were briefs by *Davis, Soquet, Cherney & Ross* of Green Bay, and oral argument by *Donald E. Soquet.*

For the respondent there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *J. Robert Kaftan.*

HALLOWS, J. The preliminary skirmishes in the pleadings do not prevent this court from construing the complaint liberally to ascertain what the plaintiff intended to plead and to do "substantial justice between the parties." Sec. 263.27, Stats. The plaintiff was ordered to plead his causes of action separately and he intended by the amended complaint to obtain the benefit of three causes of action while depriving the defendant of the benefits of a demurrer. The first cause of action alleging the facts of the accident and a violation of the safe-place statute, sec. 101.06, was incorporated into the third cause of action so far as the facts were concerned but we construe the pleadings as not incorporating the allegation of a violation of the safe-place statute. Would it not be error in considering the substance of the complaint to follow the form and hold the plaintiff disregarded the court's order and pleaded the same cause

of action three times? While it is true the safe-place statute does not create a new cause of action but only imposes a higher standard of care,[1] we have stated the better practice for the sake of clarity of issues is to plead common-law negligence and the safe-place statute as separate causes of action.[2] The defendant should not be foreclosed from raising the legal sufficiency of an alleged cause of action by construing this complaint to state the same cause of action in duplicate.

In the trial court the plaintiff strenuously argued for a recognition of the recent change in tort immunity and for a ruling that religious corporations should no longer be immune from suits grounded on common-law negligence. Addressing itself to this argument, the trial court stated it was not necessary in passing upon the demurrer to accept the argument and even though the trend was to change the law, it would not in a proper case take it upon itself to do so. The trial court considered *Baldwin v. St. Peter's Congregation* (1953), 264 Wis. 626, 60 N. W. (2d) 349, and the other decisions of this court establishing religious immunity to be the law until this court ruled otherwise. That was the correct position for the trial court to take and this court is now confronted on the facts of this case with the issue of whether a religious organization has liability or immunity for acts of common-law negligence causing injury to one of its parishioners while attending a church service. We consider it immaterial the defendant is a corporation or no act of negligence of an agent or servant is alleged as distinguished from the acts of the defendant. Immunity does not rest on the technical form in which a religious institution as a legal entity exists or is organized; and legal entities

---

[1] *Holzworth v. State* (1941), 238 Wis. 63, 298 N. W. 163; *Mullen v. Reischl* (1960), 10 Wis. (2d) 297, 103 N. W. (2d) 49; *Presser v. Siesel Construction Co.* (1963), 19 Wis. (2d) 54, 119 N. W. (2d) 405.

[2] *Lealiou v. Quatsoe* (1961), 15 Wis. (2d) 128, 112 N. W. (2d) 193.

necessarily and persons may act through agents and representatives. Nor do we consider it pertinent the plaintiff was a parishioner and was attending church services at the time of injury.

The question of immunity of a religious organization for common-law negligence represents the last phase of the conflict between the doctrine of liability and the doctrine of immunity in governmental, charitable, and religious cases. Liability for common-law negligence is the general rule; immunity, the exception. The immunity of religious institutions from liability for negligence was created by the judicial process, basically on the grounds of public policy, and was intimately interwoven with the granting of immunity to governments and public charities. The abolition of governmental immunity in *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618, and of charitable hospital immunity in *Kojis v. Doctors Hospital* (1961), 12 Wis. (2d) 367, 107 N. W. (2d) 131, 107 N. W. (2d) 292, extended in *Duncan v. Steeper* (1962), 17 Wis. (2d) 226, 116 N. W. (2d) 154, requires us now to re-examine the doctrine of immunity of religious institutions to determine whether the same principles and reasons for such abolition apply to religious immunity and whether the continued existence of such immunity is justified on any grounds.

In *Kojis* we stated charitable immunity was granted on the ground of public policy and specifically, quoting from *Morrison v. Henke* (1917), 165 Wis. 166, 160 N. W. 173, which first recognized such immunity, because a charitable hospital performed a quasi-public function in administering to the poor and the sick without any pecuniary profit to itself, the doctrine of *respondeat superior* should not apply to it in favor of those receiving its charitable services. Refusing to apply the doctrine of *respondeat superior*, this court through the years enlarged the charitable immunity to preclude recovery by injured persons who did not receive

directly any benefits from the charitable services involving the negligence of such hospitals [3] and to encompass other charities not performing the so-called quasi-public function of administering to the poor and the sick. *Bachman v. Young Women's Christian Asso.* (1922), 179 Wis. 178, 191 N. W. 751. In considering charitable immunity, no distinction was made between purely religious institutions and charitable institutions. Religious institutions were generally considered to be charitable or at least sufficiently analogous to justify the immunity. *Baldwin v. St. Peter's Congregation, supra; Waldman v. Young Men's Christian Asso.* (1938), 227 Wis. 43, 277 N. W. 632; *Smith v. Congregation of St. Rose* (1953), 265 Wis. 393, 61 N. W. (2d) 896. In overruling the doctrine of charitable immunity we did not state the reasons for granting it were wrong in 1917 but expressly stated the court was justified in acting as it did in view of the conditions as they then existed, but the rule of *stare decisis* did not require us to perpetuate a doctrine which was no longer applicable in view of the changes in present-day charitable hospitals. The language of *Kojis* did not extend to religious immunity.

In abolishing governmental immunity in the *Holytz Case* we pointed out the rule of governmental immunity as first adopted in *Hayes v. Oshkosh* (1873), 33 Wis. 314, 14 Am. Rep. 760, was justified on the ground a municipality was engaged in the performance of a public service in which it had no particular interest and from which it derived no particular benefit or advantage in its corporate capacity but was bound to perform for the general welfare of the community, and therefore the maxim *respondeat superior* had no application. We expressly stated in *Holytz* that henceforth the rule of *respondeat superior* would apply to a public

---

[3] *Grabinski v. St. Francis Hospital* (1954), 266 Wis. 339, 63 N. W. (2d) 693; *Schumacher v. Evangelical Deaconess Society* (1935), 218 Wis. 169, 260 N. W. 476.

body and thus it would be liable for damages for the torts of its officers and employees occurring in the course of the business of such public body. The word "business" was not used in a financial sense but rather in the sense of activity whether formerly considered governmental or proprietary. The result of *Holytz* is we returned to the original concept of *respondeat superior* as stated in *Harper v. Milwaukee* (1872), 30 Wis. 365, and in the dissenting opinion of *Bachman v. Young Women's Christian Asso., supra,* and so destroyed the distinctions explained and perpetuated in such cases as *Apfelbacher v. State* (1915), 160 Wis. 565, 152 N. W. 144, *Robb v. Milwaukee* (1942), 241 Wis. 432, 6 N. W. (2d) 222, and *Virovatz v. Cudahy* (1933), 211 Wis. 357, 247 N. W. (2d) 341.

The *Harper Case* was the first to hold a municipal corporation had no more right to create and maintain a nuisance than a private individual and was liable therefor on the ground the imputation of misfeasance or nonfeasance of an agent to his principal or of a servant to his master applied to a municipality. The doctrine of *respondeat superior* is basically one of public policy to place liability upon the principal because in the promotion of his work he has control of the mode and manner of its performance by his servant or agent and therefore ought to be liable for injuries caused by the activity. The following year, however, this court in deciding a municipality was not liable for negligence stated in *Hayes v. Oshkosh, supra,* the doctrine of *respondeat superior* did not apply because the municipality had no financial interest in performing the activity. Based on these conflicting views of the scope of *respondeat superior,* the distinction between governmental and proprietary functions and the governor-governed rule developed.

Religious immunity likewise was founded on the restricted concept of *respondeat superior* that the master or principal must or could derive some profit from the activities rather

than upon his control or right of control over the agent. Assuming for the sake of argument the reasoning of *Kojis* does not sustain the abolition of immunity of religious institutions, the rationale of *Holytz,* resting upon the broader doctrine of *respondeat superior* and thus rejecting the concept of a sovereign can do no wrong and is above the law, does apply to religious institutions. Such a view is not illogical or startling. Religious institutions today enjoy no immunity for breach of a higher degree of care than common-law negligence under the safe-place statute or for public nuisances. In *Wilson v. Evangelical Lutheran Church* (1930), 202 Wis. 111, 230 N. W. 708, we stated the safe-place statute made no exception for religious institutions and there were no reasons of public policy why the owner of a public building such as a church should not be held to the same standard of care in its construction and maintenance as any other owner of a public building. This rule has consistently been followed both as to religious institutions and charitable institutions. *Zimmers v. St. Sebastian's Congregation* (1951), 258 Wis. 496, 46 N. W. (2d) 820; *Wright v. St. Mary's Hospital of Franciscan Sisters* (1953), 265 Wis. 502, 61 N. W. (2d) 900; *Harnett v. St. Mary's Congregation* (1956), 271 Wis. 603, 74 N. W. (2d) 382; *Hintz v. Zion Evangelical United Brethren Church* (1961), 13 Wis. (2d) 439, 109 N. W. (2d) 61; *Waldman v. Young Men's Christian Asso.* (1938), 227 Wis. 43, 277 N. W. 632; *Grabinski v. St. Francis Hospital* (1954), 266 Wis. 339, 63 N. W. (2d) 693. The core of this reasoning is an injured person should be indemnified and the nature of the owner of the public building furnishes no grounds for excusing a breach of the standard of care owed to the public.

The shift from immunity based on the nature of the activities or the character of the defendant to liability was noticeable in the language of *Smith v. Congregation of St.*

*Rose, supra.* In that case the court pointed out the historic reasons for immunity were archaic and would be given very little weight if the question were then presented for the first time. Under the doctrine of *stare decisis,* it was considered immunity for common-law negligence ought not to be changed by the court but by the legislature. However, the court refused to extend the doctrine to cases of nuisance. Except for intentional torts, acts of commission or omission may in many cases constitute negligence and a nuisance. This was pointed out in the *St. Rose Case, supra;* again in *Walley v. Patake* (1956), 271 Wis. 530, 74 N. W. (2d) 130; and recently in *Plesko v. Milwaukee,* ante, p. 210, 120 N. W. (2d) 130. It is inconsistent and illogical to hold a religious institution liable for nuisance and in some cases for a breach of a standard of care greater than common-law negligence and yet grant immunity for the same acts or breach of a lesser degree of care under the label of common-law negligence. The doctrine of *respondeat superior* based on the control concept applies equally to all these cases. 2 Harper and James, Law of Torts, pp. 1667, 1669, sec. 29.16, Liability of Charitable Institutions; Prosser, Law of Torts (2d ed.), pp. 770, 784, sec. 109. The analogy of religious institutions to charities and charities to governmental functions must now work in reverse unless some valid independent ground for religious immunity exists.

It is contended in the defendant's brief immunity of religious society is necessary and on public policy is justified in order not to hinder the good work of religious institutions. This ground was advanced by the court for charitable immunity in *Schumacher v. Evangelical Deaconess Society, supra;* yet in the *St. Rose Case* eighteen years later such grounds were not recognized in denying immunity to religious institutions for nuisance. There can be no quarrel with the argument the public benefits generally from the

work of religious institutions. Although it is urged religion is essential and beneficial to mankind and ought to be encouraged, the question is whether the benefit to the many should be at the expense of the innocent sufferer of injuries caused by the negligence of an agent of the religious institution. The argument transforms the innocent one into a victim suffering unwillingly the financial loss for the benefit of a religious institution and thus requiring such person to make a financial sacrifice to such institution. When an institution owes a duty of care to another and, as a result of carrying on its activities through agents whether the enterprise or activity involves financial gain or not and no matter how lofty the purpose or motive, injures another either directly or through agents, the breach of duty ought not be excused or justified on the grounds of the laudable purpose or the public benefit of the activity causing the injury. See, on the problem, Anno. Charity—Tort Liability —Immunity, 25 A. L. R. (2d) 65, sec. 12; 45 Am. Jur., Religious Societies, p. 784, sec. 75. As a matter of natural justice, which is good public policy, a person harming or injuring another either directly or through his agents or servants ought to indemnify and make reparation to the injured one. Natural justice finds a legal basis and expression in the normal uncurtailed operation of *respondeat superior*. The disposition of a person to recognize and to render to every man as an individual his due, so neither may gain by the other's loss is but commutative justice. Davitt, Elements of Law, p. 27. Certainly institutions teaching divine justice, the dignity of man, and his obligations to his fellowmen and to his Creator would not claim on the basis of their teachings that they ought to be exempt from repairing the injury done by themselves or their agents to another.

We do not believe the result of abolishing immunity of religious organizations for negligence casts any insuperable

financial burden upon them. Nor does the financial burden justify immunity or tip the scales of equity in their favor. They already have liability for acts of higher degrees of negligence under the safe-place statute and for nuisances which liability they can and have in many cases minimized by insurance.

In making this decision we have not overlooked the cases of *Tomasello v. Hoban* (1958), 6 Ohio (2d) 508, 155 N. E. (2d) 82, and *Lyon v. Tumwater Evangelical Free Church* (1955), 47 Wash. (2d) 202, 287 Pac. (2d) 128, which upheld the doctrine of religious immunity although previously abolishing immunity in hospital cases. The first case is a lower court decision and neither expresses any convincing reasons or contains a discussion of the problem.

We make the new rule abolishing immunity of religious institutions for negligence prospective to July 1, 1963. See *Kojis v. Doctors Hospital, supra; Holytz v. Milwaukee, supra; Olson v. Augsberger* (1962), 18 Wis. (2d) 197, 118 N. W. (2d) 194; Fairchild, Recent Developments in the Area of Torts, 46 Marquette Law Review (1962), 1. Causes of action arising prior to that date will be governed by the old rule of immunity. The new rule, however, will apply to the instant case. This requires an affirmance of the order of the trial court on the grounds the defendant as a religious organization has no immunity for common-law negligence.

*By the Court.*—Order affirmed.

WILKIE, J., took no part.