Tracy SZARZYNSKI and Cindy Belanger, Plaintiffs-Joint-Appellants,

v.

YMCA, CAMP MINIKANI, Defendant-Respondent,†

ABC INSURANCE COMPANY and DEF Insurance Company, Defendants,

MANPOWER TEMPORARY SERVICES and Harnishfeger Corporation, Defendants-Joint-Appellants.

Court of Appeals

*No. 92–0089. Oral argument March 2, 1993.—Decided April 20, 1993.*

(Also reported in 500 N.W.2d 391.)

†Petition to review granted.

On behalf of the plaintiffs-joint-appellants, the cause was submitted on the briefs of *Kelly L. Centofanti* of *Aiken & Scoptur, S.C.*, of Milwaukee. Oral argument by *Kelly L. Centofanti*.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Michael J. Cieslewicz* and *Vicki L. Arrowood* of *Kasdorf, Lewis & Swietlik, S.C.*, of Milwaukee. Oral argument by *Michael J. Cieslewicz*.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

FINE, J.   This is an action to recover compensation for personal injuries suffered by Tracy Szarzynski who, when she was approximately twelve years old, was injured while attending Camp Minikani, a recreational facility owned and operated by the defendant YMCA. Cindy Belanger, Szarzynski's mother, paid $362 for Szarzynski to spend 14 days at the camp. The trial court dismissed the action on the ground that the YMCA is a "nonprofit organization," as that term is used by section 895.52, Stats., and, accordingly, was immune from suit. We conclude that, so applied, section 895.52 violates the equal-protection clauses of the United States and Wisconsin constitutions. We reverse.

## I.

Section 895.52, Stats., grants broad immunity to those who permit the recreational use of their property by the public. It provides, as material to this lawsuit:

> Except as provided in subs. (3) to (6), no owner and no officer, employe [sic] or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:
>     1.   A duty to keep the property safe for recreational activities.
>     2.   A duty to inspect the property, except as provided under s. 23.115(2).[1]
>
>     3.   A duty to give warning of an unsafe condition, use or activity on the property.

---

[1] Section 23.115(2), Stats. requires the Department of Natural Resources to inspect trail signs and other features designated on maps provided by the department.

Section 895.52(2)(a), Stats. The exceptions in subsections (3) to (6) vary the scope of the immunity depending on who owns the property:

- There is no immunity for injuries suffered on state-owned property if:

  the injuries occur at an event to which "the owner charges an admission fee for spectators," or

  the injury was caused by either a "malicious act or by a malicious failure to warn" of a known unsafe condition on land designated "for a recreational activity."

Section 895.52(3), Stats.

- There is no immunity for injuries suffered on property owned by "a governmental body other than this state" if:

  the injuries occur at an event to which "the owner charges an admission fee for spectators," or

  the injury was caused by either a "malicious act or by a malicious failure to warn" of a known unsafe condition on land designated "for recreational activities."

Section 895.52(4), Stats.

- There is no immunity for injuries suffered on recreational property owned by a "private property owner" if:

  the "owner collects money, goods or services in payment for use of the owner's property for the recreational activity during which the injury occurs" if the total

value received by the owner for the recreational use of the property "during the year in which the injury occurs exceeds $2,000";[2]

the injury was caused by either a "malicious act" or by "a malicious failure to warn" of a known unsafe condition;

the injury is to an invited social guest, and the injury occurs on platted land, residential property, or property within 300 feet of a structure on land that is classified either as "mercantile or manufacturing under s. 70.32(2)(b)2 or 3";

the injury is to the owner's employee "acting within the scope of his or her duties."

Section 895.52(6), Stats.

• There is no immunity for injuries suffered on property owned by a "nonprofit organization" if:

---

[2] The statute exempts the following from the definition of "payment": the "gift of wild animals or any other product resulting from the recreational activity," an "indirect pecuniary benefit to the private property owner or to the property that results from the recreational activity," a "donation of money, goods or services made for the management and conservation of the resources on the property," any "payment of not more than $5 per person per day for permission to gather any product of nature" on the property, payments received "from a governmental body," payments "received from a nonprofit organization for a recreational agreement." Section 895.52(6)(a), Stats.

370

the injury was caused by either a "malicious act" or by "a malicious failure to warn" of a known unsafe condition.

Section 895.52(5), Stats. Under the statute, a "nonprofit organization" is "an organization or association not organized or conducted for pecuniary profit." Section 895.52(1)(c), Stats. A "private property owner" is "any owner other than a governmental body or nonprofit organization." Section 895.52(1)(e), Stats.

■ Szarzynski advances three arguments to support her contention that we should permit her suit against the YMCA to proceed. First, she contends that the statute's definition of "nonprofit organization" is ambiguous and that a construction of the statute consistent with the legislature's intent would exclude organizations like the YMCA, which may not be *organized* for pecuniary profit but do "profit" because their revenues exceed their expenditures. Second, she submits that implementation of the statute denies her of property in violation of what she maintains is a substantive right to due process. Third, she argues that the statute's classification scheme denies her equal protection of the law. As noted, we agree with this last contention. Accordingly, we do not discuss the first two issues. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

## II.

■ Equal protection of the law is guaranteed by the Fourteenth Amendment to the United States Constitu-

tion and by Article I, section 1 of the Wisconsin Constitution.[3]

> Although no precise formula has been developed, the [United States Supreme] Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective.

*McGowan v. Maryland*, 366 U.S. 420, 425 (1961). In an attempt to add some precision, the Wisconsin Supreme Court has identified five factors relevant to the equal-protection analysis:

---

[3] The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." The functional equivalent of this clause (and of the Fourteenth Amendment's due-process clause) is found in Article I, section 1 of the Wisconsin Constitution: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed." Although Article I, section 1, was based on the Declaration of Independence, "there is no substantial difference between" its guarantee of equal protection and that of the Fourteenth Amendment. *State ex rel. Sonneborn v. Sylvester*, 26 Wis. 2d 43, 49-50, 132 N.W.2d 249, 252 (1965); *see also Funk v. Wollin Silo & Equipment, Inc.*, 148 Wis. 2d 59, 61 n.2, 435 N.W.2d 244, 245 n.2 (1989) ("We have given the equal-protection provision of the Wisconsin Constitution and the parallel clause of the United States Constitution identical interpretation.").

(1) All classifications must be based upon substantial distinctions which make one class really different from another.

(2) The classification adopted must be germane to the purpose of the law.

(3) The classification must not be based upon existing circumstances only.

(4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*State ex rel. Baer v. City of Milwaukee*, 33 Wis. 2d 624, 633, 148 N.W.2d 21, 25-26 (1967) (bracketed material, citations, and ellipses omitted). Although disputed by the YMCA, the law is clear in this state that each of these criteria "must be satisfied to sustain a legislative classification against an equal-protection attack." *Funk v. Wollin Silo & Equipment, Inc.*, 148 Wis. 2d 59, 63, 435 N.W.2d 244, 246 (1989); *see also Kallas Millwork Corp. v. Square D Co.*, 66 Wis. 2d 382, 388, 225 N.W.2d 454, 458 (1975) ("This court has long required that any legislative classification must satisfy [the] five criteria" set out above.).[4] Thus, although

---

[4]*But see Milwaukee Brewers v. Department of Health & Social Services*, 130 Wis. 2d 79, 97-98, 387 N.W.2d 254, 262 (1986) (Although "the five-factor test provides a useful analytical tool, it is not *per se* determinative."). Where decisions of the Wisconsin Supreme Court appear to be in conflict, we are obliged to follow the court's most recent pronouncement. *Spacesaver Corp. v. Department of Revenue*, 140 Wis. 2d 498, 502, 410 N.W.2d 646, 648 (Ct. App. 1987). Accordingly, *Funk* governs.

" 'legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest,' " *Funk*, 148 Wis. 2d at 69, 435 N.W.2d at 248 (citation omitted), section 895.52, Stats., falters on the second of the five factors"the requirement that the classification be "germane" to the law's purpose.

In enacting sec. 895.52, Stats., the legislature announced its intent:

> The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit.

1983 Wis. Act 418 sec. 1. This supplements the general purpose of section 895.52 and its predecessors to encourage owners of recreational property to open their land to the public. *See Copeland v. Larson*, 46 Wis. 2d 337, 344, 174 N.W.2d 745, 749 (1970) (interpreting predecessor statute). Thus, section 895.52 is to "be liberally construed in favor of property owners to protect them from liability." 1983 Wis. Act 418 sec. 1. The grant of immunity to entities "not *organized* or *conducted* for pecuniary *profit*," *see* sec. 895.52(1)(c), Stats. (emphasis added), is not germane to these goals.

"Profit" in the law is not the same as "benefit." The legislature has directed that when courts construe legislative language, words "that have a peculiar meaning in the law shall be construed according to such meaning." Section 990.01(1), Stats. "Profit," as used in the law, means:

Most commonly, the gross proceeds of a business transaction less the costs of the transaction; *i.e.*, net proceeds. Excess of revenues over expenses for a transaction; sometimes used synonymously with net income for the period. Gain realized from business or investment over and above expenditures.

*Black's Law Dictionary* 1211 (6th ed. 1990). A "benefit," on the other hand, may, but need not be, "profit." Thus, *Black's* defines "benefit" as encompassing the concepts of "[a]dvantage; profit; fruit; privilege; gain; interest," and notes that "[b]enefits are something to advantage of, or profit to, recipient." *Id.* at 158. The concept of "benefit" is, therefore, more broad than is the concept of "profit," and section 895.52's classification based on whether an entity is "organized or conducted for pecuniary profit" is, accordingly, inconsistent with legislature's expressed intent. Stated another way, an entity may "derive more than a minimal pecuniary benefit," 1983 Wis. Act 418 sec. 1, from the recreational use of its property even though it is "an organization or association not organized or conducted for pecuniary profit," section 895.52(1)(c), Stats. The record here is a forceful example.

The YMCA is a nonprofit organization. It is not, however, impecunious. At the end of 1988 its net worth exceeded $28 million. Indeed, in 1990 the YMCA's total revenue was more than $14 million, and it had a surplus (revenues over expenditures) of $110,041. More importantly, its 1990 annual report describes "camping" as a "revenue growth leader" and, as of December 31, 1988, the YMCA reported the net book value of Camp Minikani as more than $750,000. Certainly it cannot be said, and we do not understand the YMCA even to argue, that it "does not derive more than a minimal pecuniary benefit," 1983 Wis. Act 418 sec. 1, from the recreational use of the Camp Minikani facil-

ity. Indeed, its immunity enhances the "pecuniary benefit" it derives from the Minikani facility: the YMCA's 1990 annual report credits the organization's "[e]xpense savings in . . . public liability insurance" as having "again helped us toward our excellent performance" in running its surplus of revenues over expenditures.

Limiting the liability of property owners who do "not derive more than a minimal pecuniary benefit" from the recreational use of that property is a valid and worthy public-policy goal in keeping with the general purpose of section 895.52, Stats. The discrimination between those injured on property owned by nonprofit organizations like the YMCA that is being used for recreational purposes, and those injured on property being used for recreational purposes that is not owned by nonprofit organizations does not advance that goal, however, because there is no relationship between whether an owner of property "derive[s] more than a minimal pecuniary benefit" from the recreational use of that property and whether it is "an organization or association not organized or conducted for pecuniary profit," section 895.52(1)(c), Stats. The classification is thus not, in the words of part two of the five-part test, "germane to the purpose of the law." *See Baer*, 33 Wis. 2d at 633, 148 N.W.2d at 25. An analysis of *Milwaukee Brewers v. Department of Health & Social Services*, 130 Wis. 2d 79, 387 N.W.2d 254 (1986), makes this proposition clear.

*Milwaukee Brewers* struck down as a violation of equal protection a law that was designed to facilitate the construction of needed prison-space in Wisconsin, but that truncated the site-review process only for the prison proposed in Milwaukee's Menomonee Valley. *Id.*, 130 Wis. 2d at 101, 387 N.W.2d at 263-264. We quote at some length from the court's explanation

because it prescribes the analysis required here, albeit in a different context:

> The state, by relying on the *articulated rationale* in the statute as establishing a rational basis for treating Menomonee Valley challengers differently, is, in effect, saying because prison overcrowding is a critical problem in this state, it is rational to treat Menomonee Valley challengers differently from all others. That proposition simply does not withstand analysis. The *articulated rationale* unquestionably provides a rational basis for the legislative action directing that a prison be built in the Menomonee Valley. But that is not the question.
>
> The *articulated rationale* clearly would provide a rational basis for a truncated set of environmental and judicial review rules for *all* prison construction, had the legislature chosen to so direct, but that is not the question either.
>
> The question is whether the *articulated rationale*, i.e., the critical statewide need for prison space, provides a reasonable basis to deny rights to Menomonee Valley challengers. It does not. There are critical links that are missing. There must be more. The statute, however, provides no more.

*Ibid.* ("all" emphasized in original, other emphasis added). By the same token in this case, there are rational bases for: (1) granting a form of immunity to owners of property who derive no more than "minimal pecuniary benefit" from the recreational use of that property; and (2) granting a form of immunity to all owners of property that is used for recreational purposes. The rational bases for these legislative actions, in the words of *Milwaukee Brewers*, "is not the question," however, because section 895.52 does neither.

377

■

The question here is whether the "articulated rationale" of section 895.52, Stats., namely, to limit the liability of property owners who do "not derive more than a minimal pecuniary benefit" from the recreational use of their property, provides a rational basis for what the provision actually does: protect from suit landowners who *do* derive significant "pecuniary benefit" from the recreational use of their property but are structured as "nonprofit organizations," and deny that protection to landowners who also derive significant "pecuniary benefit" from the recreational use of their property but are not structured as "nonprofit organizations." The answer is "no"; there is simply no rational basis for this classification that is germane to the statute's "articulated rationale." The legislature's purpose to protect property owners who do "not derive more than a minimal pecuniary benefit" from the recreational use of their property so as to open their land for recreational use is not advanced by carving out specific protection for the benefit of those landowners that are structured as "nonprofit organizations."[5] The interest

---

[5] The situation here is thus different from that in *Goodson v. City of Racine*, 61 Wis. 2d 554, 556, 213 N.W.2d 16, 18 (1973), which concerned the predecessor provision to section 895.52, Stats. The predecessor statute provided protection to landowners against suit arising out of certain specified recreational activities. *Id.*, 61 Wis. 2d at 556-557 n.1, 213 N.W.2d at 18 n.1. The court held that governmental bodies were not "owners" as that term was used in the statute, *id.*, 61 Wis. 2d at 559, 213 N.W.2d at 19, and rejected as "frivolous" the municipality's contention that such an interpretation violated the guarantee of equal protection, *id.*, 61 Wis. 2d at 561, 213 N.W.2d at 20. The court explained that "[s]ince municipalities had previously and do presently encourage its citizenry to make use of its [*sic*] property, [legislation] to encourage municipalities to allow use

that *is* advanced by section 895.52, namely, protecting those landowners structured as "nonprofit organizations," even though they may derive significant "pecuniary benefit" from the property, has nothing to do with the statute's "articulated rationale."[6]

*By the Court.*—Judgment reversed.

WEDEMEYER, P.J. (*dissenting*). As noted by the majority, the underlying rationale for sec. 895.52, Stats., is to encourage property owners to open their land to the public for recreational use. Further, sec. 895.52 is to "be liberally construed in favor of property owners to protect them from liability." 1983 Wis. Act 418 sec. 1. Because I read sec. 895.52 to be sufficiently broad to cover the YMCA with immunity in this case, I respectfully dissent.

The majority concludes that sec. 895.52, Stats., as applied to "non-profit organizations," violates the equal protection clauses of the United States and Wisconsin constitutions. The keystone to its analysis is that the inclusion within sec. 895.52 of entities "not organized or conducted for pecuniary profit" is not germane to the

---

of its [*sic*] property would be purposeless." 61 Wis. 2d at 559, 213 N.W.2d at 19. Accordingly, the court concluded: "There is no basis upon which to argue—in light of the legislative intent to open up private property for recreational purposes—that the legislative classification in limiting the applicability of [the statute] to private landowners is arbitrary or unreasonable." *Id.*, 61 Wis. 2d at 561, 213 N.W.2d at 20.

[6] Thus, although the immunity granted by section 895.52, Stats., helps entities structured as non-profit organizations that *also* do charitable work to, as the dissent notes, "continue their charitable work," Dissent at 381, the statute's protection is not limited to *charitable* non-profit organizations, and, critical to our analysis, assisting non-profits, whether charitable or not, is not an "articulated rationale" underlying the provision.

purpose of the law. The majority first notes that the legislature intended for property owners to open up their land "under circumstances in which the owner does not derive more than a minimal pecuniary benefit." The majority next reasons that: (1) "profit" in the law is not synonymous with "benefit;" and (2) even though an organization is not organized or conducted for pecuniary profit, it may still derive more than a minimal pecuniary benefit from the recreational use of its property. Finally, because the YMCA derived a "significant pecuniary benefit" from the recreational use of its property, the purposes underlying sec. 895.52 would not be advanced by granting it immunity, irrespective of its non-profit label.

I question whether sec. 895.52, Stats., should be read so restrictively. The opinion takes a very narrow view as to what constitutes non-profit. Although there is little doubt that the YMCA was "turning a profit" on Camp Minikani, one must look at the totality of the circumstances in assessing whether the YMCA derived more than a minimal pecuniary benefit from the recreational use of its property. Here, the YMCA is a statewide organization that provides numerous services and activities. On some activities "like Camp Minikani" it makes money, on others it runs a deficit. Any "profits," however, are simply reallocated to areas of deficit. The bottom line is that to remain "alive," entities like the YMCA, although organized in a non-profit manner, must take in at least as much money as they disburse. Otherwise, these organizations would be unable to continue their charitable work.[1]

---

[1] It should be noted that the YMCA's 1990 surplus revenue of $110,041, mentioned by the majority opinion, is not solely attributable to the operation of Camp Minikani. The surplus revenue reflects the popularity of select YMCA programs as

To state that the recreational immunity statute only protects those organizations that receive little or no pecuniary benefits from the circumstances surrounding their property's recreational use would stifle the greater good that I believe the legislature intended. By holding that sec. 895.52, Stats. is unconstitutional, the majority opinion tends to discourage non-profit organizations from investing in land, and subsequently opening that land for recreational use. I believe that the majority too narrowly construes the recreational immunity statute. I would hold that sec. 895.52 is not unconstitutional as written and that the YMCA, as a non-profit organization, is immune from suit.

well as an increase in public donations. This money will assuredly be calculated to expand the quantity and quality of the programs the YMCA offers, thereby increasing the overall public benefit derived from the YMCA.