Tracy SZARZYNSKI and Cindy Belanger, Plaintiffs-Joint-Appellants,

v.

YMCA, CAMP MINIKANI, Defendant-Respondent-Petitioner,

ABC INSURANCE COMPANY and DEF Insurance Company, Defendants,

MANPOWER TEMPORARY SERVICES and Harnischfeger Corporation, Defendants-Joint-Appellants.

Supreme Court

*No. 92–0089. Oral argument March 1, 1994.—Decided June 20, 1994.*

(Also reported in 517 N.W.2d 135.)

875

For the defendant-respondent-petitioner there were briefs by *Michael J. Cieslewicz, Vicki L. Arrowood,* and *Kasdorf, Lewis & Swietlik, S.C.,* Milwaukee and oral argument by *Michael J. Cieslewicz.*

For the plaintiffs-joint-appellants there was a brief by *Timothy J. Aiken, Kelly L. Centofanti* and *Aiken & Scoptur, S.C.,* Milwaukee and oral argument by *Timothy J. Aiken* and *Kelly L. Centofanti.*

Amicus curiae brief was filed by *Charles D. Hoornstra,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

JANINE P. GESKE, J.   This is a review of a published decision of the court of appeals, *Szarzynski v. YMCA, Camp Minikani,* 176 Wis. 2d 365, 500 N.W.2d

391 (Ct. App. 1993), reversing a judgment of the circuit court for Milwaukee County, Patricia D. McMahon, Circuit Judge. The circuit court granted summary judgment to the defendant, YMCA, Camp Minikani (YMCA). The court dismissed an action brought by Tracy Szarzynski and her mother, Cindy Belanger (hereinafter collectively referred to as Szarzynski) to recover compensation for personal injuries suffered by Szarzynski at age twelve, while attending the YMCA's Camp Minikani. In its decision, the circuit court concluded that the YMCA is a "nonprofit organization," as the term is defined under sec. 895.52(1)(c), Stats., and, as such, is immune from suit, pursuant to sec. 895.52(2), Stats.

A majority of the court of appeals (Wedemeyer, P.J., dissenting) reversed the circuit court and held that the grant of immunity under sec. 895.52(2) for injuries suffered on property owned by a nonprofit organization such as the YMCA is a violation of Szarzynski's right to equal protection of the law and is, therefore, unconstitutional. The court of appeals reached that conclusion because the objective of the statute—to provide immunity to those property owners who derive only a minimal pecuniary benefit from opening their lands to the public for recreational use—was not met.

We now reverse the decision of the court of appeals and hold the following:

(1) Inclusion of nonprofit organizations in the recreational immunity statute, sec. 895.52, Stats.,[1] is

_____

[1] The recreational immunity statute reads in pertinent part:

**895.52 Recreational activities; limitation of property owners' liability. (1)** *Definitions.* In this section:
    (a) 'Governmental body' means any of the following:

1. The federal government.

2. This state.

3. A county or municipal governing body, agency, board, commission, committee, council, department, district or any other public body corporate and politic created by constitution, statute, ordinance, rule or order.

4. A governmental or quasi-governmental corporation.

5. A formally constituted subunit or an agency of subd. 1, 2, 3 or 4.

(b) 'Injury' means an injury to a person or to property.

(c) 'Nonprofit organization' means an organization or association not organized or conducted for pecuniary profit.

(d) 'Owner' means either of the following:

1. A person, including a governmental body or nonprofit organization, that owns, leases or occupies property.

2. A governmental body or nonprofit organization that has a recreational agreement with another owner.

(e) 'Private property owner' means any owner other than a governmental body or nonprofit organization.

(f) 'Property' means real property and buildings, structures and improvements thereon, and the waters of the state, as defined under s. 144.01(19).

(g) 'Recreational activity' means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. 'Recreational activity' includes, but is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature and any other outdoor sport, game or educational activity, but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

(h) 'Recreational agreement' means a written authorization granted by an owner to a governmental body or nonprofit organization permitting public access to all or a specified part of the owner's property for any recreational activity.

(i) 'Residential property' means a building or structure designed for and used as a private dwelling accommodation or private living quarters, and the land surrounding the building or structure within a 300-foot radius.

880

not a violation of the equal protection clauses of the United States and Wisconsin Constitutions and does not deny due process of law. Section 895.52 is, therefore, constitutional.

(2) The term "nonprofit organization," as defined in the statute, is not ambiguous. Rather, it means "an organization or association not organized or conducted for pecuniary profit." Section 895.52(1)(c), Stats. Accordingly, the YMCA, as a nonprofit organization, is immune from suit.

The facts of this case are as follows. In July, 1988, Szarzynski attended Camp Minikani for a 14-day stay.

---

**(2)** *No duty; immunity from liability.* (a) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:

1. A duty to keep the property safe for recreational activities.

2. A duty to inspect the property, except as provided under s. 23.115(2).

3. A duty to give warning of an unsafe condition, use or activity on the property.

(b) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner is liable for any injury to, or any injury caused by, a person engaging in a recreational activity on the owner's property or for any injury resulting from an attack by a wild animal.

. . .

**(5)** *Liability; property of nonprofit organizations.* Subsection (2) does not limit the liability of a nonprofit organization or any of its officers, employes or agents for an injury caused by a malicious act or a malicious failure to warn against an unsafe condition of which an officer, employe or agent of the nonprofit organization knew, which occurs on property of which the nonprofit organization is the owner.

. . .

**(7)** *No duty or liability created.* Except as expressly provided in this section, nothing in this section or s. 101.11 nor the common law attractive nuisance doctrine creates any duty of care or ground of liability toward any person who uses another's property for a recreational activity.

881

The camp was at that time, and still is, owned by the YMCA of Metropolitan Milwaukee, Inc. In the early evening of July 13, 1988, Szarzynski and another female camper walked toward the girls' washhouse on the grounds of the camp. The washhouse had two entry doors. As Szarzynski's fellow camper made her way through the first door and was opening the second, the first door slammed shut as Szarzynski was reaching for the door knob. The force of the first door's closing broke a pane of glass in the door window and propelled pieces of the broken glass toward Szarzynski, injuring her.

Szarzynski filed an action against the YMCA/Camp Minikani in October, 1990, alleging negligence and safe place violations regarding the washhouse door. In August, 1991, the YMCA filed a motion for summary judgment, claiming that it was entitled to dismissal as a matter of law resulting from the immunity provided by sec. 895.52(2), Stats. The circuit court agreed and dismissed the suit.

On appeal, Szarzynski raised two arguments: (1) the classification scheme in sec. 895.52 denies her equal protection of the law and violates her right to due process; and (2) the statute's definition of "nonprofit organization" is ambiguous.

The court of appeals addressed only the first argument. In its decision, the court stated that there were five factors relevant to an equal protection analysis.[2] It

---

[2] The court of appeals referred to this court's opinion in *State ex rel. Baer v. Milwaukee,* 33 Wis. 2d 624, 633, 148 N.W.2d 21 (1967) (quoting *State ex rel. Ford Hopkins Co. v. Mayor,* 226 Wis. 215, 222, 276 N.W. 311 (1937)), in which the following five factors were identified as being relevant to an equal protection analysis:

'(1) All classification must be based upon substantial distinctions which make one class really different from another.

held that sec. 895.52(2) violated equal protection because even though "[l]imiting the liability of property owners who do 'not derive more than a minimal pecuniary benefit' from the recreational use of that property is a valid and worthy public-policy goal in keeping with the general purpose of section 895.52, Stats.,"[3] discrimination existed in the statute between "those injured on property owned by nonprofit organizations like the YMCA that is being used for recreational purposes, and those injured on property . . . not owned by nonprofit organizations . . .." *Szarzynski,* 176 Wis. 2d at 376. That is, the classification had the effect of benefitting those nonprofit organizations which in fact made a corporate profit from the recreational use of their lands. According to the court of appeals, the classification was not "germane to the purpose of the law." *See State ex rel. Baer v. Milwaukee,* 33 Wis. 2d 624, 633, 148 N.W.2d 21 (1967).

Szarzynski challenges the constitutionality of sec. 895.52 . The constitutionality of a statute is a question

'(2)  The classification adopted must be germane to the purpose of the law.

'(3)  The classification must not be based upon existing circumstances only . . ..

'(4)  To whatever class a law may apply, it must apply equally to each member thereof.

' . . .

'(5)  That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.'

(Footnotes omitted.) These factors were again used in *Harris v. Kelley,* 70 Wis. 2d 242, 252, 234 N.W.2d 628 (1975), when this court cited them as specific standards by which the reasonableness of a statute's classification is to be measured.

[3] *Szarzynski,* 176 Wis. 2d at 376.

of law and is reviewable without deference to the decisions of the courts below. *Guertin v. Harbour Assur. Co.*, 141 Wis. 2d 622, 633, 415 N.W.2d 831 (1987).

## EQUAL PROTECTION ANALYSIS

Wisconsin's first recreational use statute was enacted in 1963,[4] leading many other states in an

---

[4] In 1963, the legislature enacted sec. 29.68, Stats., which read:

> **29.68  Liability of landowners.** (1) *Safe for entry: no warning.* An owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for hunting, fishing, trapping, camping, hiking, berry picking, water sports, sightseeing or recreational purposes, or to give warning of any unsafe condition or use of or structure or activity on such premises to persons entering for such purpose, except as provided in sub. (3).
>
> (2) *Permission.* An owner, lessee or occupant of premises who gives permission to another to hunt, fish, trap, camp, hike, sightsee, berry pick or to proceed with water sports or recreational uses upon such premises does not thereby extend any assurance that the premises are safe for such purpose, or constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted, except as provided in sub. (3).
>
> (3) *Liability.* This section does not limit the liability which would otherwise exist for wilful or malicious failure to guard or to warn against a dangerous condition, use, structure or activity; or for injury suffered in any case where permission to hunt, fish, trap, camp, hike, sightsee, berry pick or to proceed with water sports or recreational uses was granted for a valuable consideration other than the valuable consideration, if any, paid to said landowner by the state; or for injury caused by acts of persons to whom permission to hunt, fish, trap, camp, hike, sightsee, berry pick or to proceed with water sports or recreational uses was granted, to other persons as to whom the person granting permission, or the owner, lessee or occupant of the premises, owed a duty to keep the premises safe or to warn of danger.
>
> (4) *Injury to person or property.* Nothing in this section creates a duty of care or ground of liability for injury to person or property.

attempt to promote the public recreational use of privately owned land. *See* Stuart J. Ford, Comment, *Wisconsin's Recreational Use Statute: Toward Sharpening the Picture at the Edges,* 1991 Wis. L. Rev. 491. With the implementation of sec. 895.52 twenty years later, the legislature articulated the following intent:

> Legislative intent. The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit
> . . ..

1983 Wis. Act 418, sec. 1. This legislative intent is reflected in four basic statutory elements. First, the statute defines who is considered a landowner within the scope of the statute. A nonprofit organization can be such an owner. Section 895.52(1)(d). Second, the statute defines what type of land falls within the scope of the statute. Section 895.52(1)(f) describes the "property" to be affected by the statute as "real property and buildings, structures and improvements thereon, and the waters of the state, as defined under s. 144.01(19)."

(5) *Definition.* The word 'premises' as used in this section includes lands, private ways and any buildings, structures and improvements thereon.

Wisconsin's old recreational use statute was repealed by 1983 Wis. Act 418, and a new, broader recreational use statute became effective May 15, 1984, as sec. 895.52, Stats. Since that time, the statute has been amended twice. The first amendment included "operation of an all-terrain vehicle" as a recreational activity in sec. 895.52(1)(g). 1985 Wis. Act 29, sec. 2437m. The second amendment, to sec. 895.52(6)(a), Stats., increased the maximum amount (from $500 to $2000) a landowner may collect annually in recreational use fees and still claim statutory immunity. 1989 Wis. Act 31, sec. 2823m.

The washhouse Szarzynski was entering at the time of her injury is such property. Third, the statute defines what activity, use or purpose will receive the label "recreational" and, therefore, falls within the scope of the statute. Section 895.52(1)(g) lists a series of activities undertaken for the purpose of exercise, relaxation or pleasure, many of which are provided for at Camp Minikani. Fourth, the extent of statutory immunity accorded to nonprofit organizations is described in sec. 895.52(5).

However, Szarzynski argues that the statutory classification scheme regarding liability in sec. 895.52 is unconstitutional because it discriminates between those injured on property owned by nonprofit organizations and those injured on property which is not owned by nonprofit organizations. As such, the classification scheme is not rationally related to the underlying purpose of the legislation.

"Unless the challenged statute affects a 'fundamental right' or creates a classification based on a 'suspect class,' the standard this court uses in reviewing the constitutionality of the statutory classification is the 'rational basis' test." *Matter of Care & Maintenance of K.C.,* 142 Wis. 2d 906, 916, 420 N.W.2d 37 (1988) (citation omitted). "Where a 'fundamental right' or 'suspect class' is involved, the challenged statute must pass strict scrutiny." *Id.* Neither a fundamental right nor a suspect class is implicated in this case. Therefore, in order to withstand an equal protection challenge, the statutory classification must be rationally related to a legitimate government purpose. *See San Antonio School District v. Rodriguez,* 411 U.S. 1, 17 (1973); *Nordlinger v. Hahn,* 112 S.Ct. 2326, 2331 (1992) (the equal protection clause requires that a clas-

sification rationally further a legitimate state interest).[5]

Further, " '[e]very presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality . . ..' " *Racine Steel Castings v. Hardy,* 144 Wis. 2d 553, 559, 426 N.W.2d 33 (1988) (quoting *State ex rel. Jones v. Gerhardstein,* 141 Wis. 2d 710, 733, 416 N.W.2d 883 (1987), and *Chappy v. Labor & Industry Review Commission,* 136 Wis. 2d 172, 185, 410 N.W.2d 568 (1987)). Therefore, the party challenging a statutory classification bears the burden of proving abuse of legislative discretion beyond a reasonable doubt. *Racine Steel Castings,* 144 Wis. 2d at 560 (citing *Matter of Care & Maintenance of K.C.,* 142 Wis. 2d at 914–15, and *Sambs v. City of Brookfield,* 97 Wis. 2d 356, 370, 293 N.W.2d 504, *cert. denied* 449 U.S. 1035 (1980)).

Here, Szarzynski bears the burden of demonstrating that the incorporation of the YMCA and other nonprofit organizations within the parameters of sec. 895.52, Stats., is not rationally related to the underlying objective of the legislation. *See Goodson v. Racine,* 61 Wis. 2d 554, 561, 213 N.W.2d 16 (1973). That classification would be violative of equal protection only if it rested "on grounds wholly irrelevant to the achievement of the State's objective." *McGowan v. Maryland,* 366 U.S. 420, 425 (1961).

---

[5] The equal protection clause in the Wisconsin Constitution requires the identical interpretation as that given to the parallel provision of the United States Constitution. *Funk v. Wollin Silo & Equipment, Inc.,* 148 Wis. 2d 59, 61 n.2, 435 N.W.2d 244 (1989).

The circuit court correctly found a rational basis for the distinction between nonprofit and for-profit landowners:

> The most obvious reason for limiting the liability is that it [a nonprofit organization] is not formed for the purpose of pecuniary profit. The profit it seeks is for the purpose of passing a benefit on to those for whom the organization exists. Normally, the reason a private or governmental enterprise charges admission to spectators is for pecuniary profit. But a nonprofit organization may profit monetarily from the same, but the profit is intended and must benefit the charitable purposes for which it was formed.
>
> There are good public policy reasons for limiting the liability of nonprofit organizations more so than governmental or private interests. The main reason is that a nonprofit organization does not *normally* have the kind of money the latter typically have to cover expenses. In any event, to the extent it generates funds, it is for the purposes—the charitable purposes—for which it is formed.

(Emphasis added.)

The legislative determination of limiting the liability of nonprofit organizations who open up their lands for recreational activities is rational and promotes the legislative intent of opening up more Wisconsin recreational land to the public. The fact that any given nonprofit organization may derive more than a minimal pecuniary benefit from a particular recreational activity does not imperil the rule.

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are

imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because . . . 'in practice it results in some inequality' . . . . . 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific' . . . . . 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.'

*Dandridge v. Williams,* 397 U.S. 471, 485 (1970) (citations omitted).

Szarzynski has failed to impugn the rationality between the underlying objective of the legislation and the recreational immunity granted to nonprofit organizations.

Finally, a statute does not violate substantive due process if it bears a rational relationship to the underlying legislative purpose. Since we have held that the limited immunity from liability afforded to nonprofit organizations under sec. 895.52 bears a rational relationship to the underlying legislative purpose, Szarzynski's substantive due process argument has no merit. *See State v. McManus,* 152 Wis. 2d 113, 130, 447 N.W.2d 654 (1989).

## *"NONPROFIT ORGANIZATION" IS NOT AMBIGUOUS*

Szarzynski claims that the statutory definition of nonprofit organization as "an organization or association not organized or conducted for pecuniary profit" is ambiguous. *See* sec. 895.52(1)(c), Stats. We disagree. The plain language of sec. 895.52 clearly and unambiguously sets forth the intent of the legislature: to

limit liability to those organizations which are recognized as nonprofit.

"Nonprofit corporation" is defined in the following manner:

> A corporation no part of the income of which is distributable to its members, directors or officers. Corporation organized for other than profit-making purposes. . . .
>
> For purposes of federal income taxation, an organization may be exempt . . . if it is organized and operated exclusively for one or more of the following purposes: (a) religious, (b) charitable, (c) scientific. . . .

*Black's Law Dictionary* 1056 (6th ed. 1990). The United States Treasury Department classified the YMCA as a nonprofit organization when it stated that:

> It is the opinion of this office, based upon the evidence presented, that you are exempt from Federal income tax under the provisions of section 101(6) of the Internal Revenue Code and corresponding provisions of prior revenue acts, as it is shown that you are organized and operated exclusively for charitable etc., purposes.[6]

The statute is clear on its face and capable of one simple construction—that the organizations that are organized and/or conducted for purposes other than profit-making are eligible for recreational immunity under the statute.

Contrary to the dissent, the legislatively created recreational immunity afforded to nonprofit organiza-

---

[6] This status was recognized in a letter from the U.S. Treasury to the YMCA dated September 28, 1942.

tions does not resurrect charitable immunity. Immunity for charitable and religious organizations was both created and later eliminated by the courts on public policy grounds. *Widell v. Holy Trinity Catholic Church,* 19 Wis. 2d 648, 651, 121 N.W.2d 249 (1963). Here, we have a very distinct statute, the intent of which is not to protect charitable organizations but to open lands for recreational use by the public. The legislature has decided the means by which that goal is accomplished is to provide statutory immunity to groups of property owners who do not derive more than a minimal pecuniary benefit for that use. The legislature also determined that nonprofit organizations fall within that group.

Szarzynski has failed to prove that the legislature has acted unreasonably. Accordingly, we hold that the YMCA's status as a nonprofit organization under sec. 895.52(1)(c), Stats., qualifies it for immunity under sec. 895.52(2). Section 895.52 is not unconstitutional as written, since it is rationally related to a legitimate government purpose.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I dissent because I conclude, as did the court of appeals, that no rational basis exists for immunizing non-profit corporations that charge fees for recreational activity on their land from suit under the recreational immunity statute. I agree with the court of appeals that without a rational basis for treating fee-paying plaintiffs injured on the recreational land of a non-profit differently from fee-paying plaintiffs who are injured

on such land belonging to anyone else, the statute violates the equal protection guarantees of the Fourteenth Amendment to the federal Constitution and Art. I, Sec. 1 of the Wisconsin Constitution.

I agree with the majority opinion that the classification at issue must be rationally related to the purpose of the recreational immunity statute. I also agree with the majority's articulation of the purpose of the statute: By granting immunity to landowners who derive no more than a minimal pecuniary benefit[1] from the recreational use of their property, 1983 Act 418, sec. 1, the statute encourages landowners to open their land to the public for recreational use. The majority, however, fails to explain the rational relationship between the statutory purpose and the grant of immunity to non-profit, fee-charging landowners who derive significant pecuniary benefit from the recreational use of their property.

The majority opinion, the circuit court's decision, the dissenting opinion of the court of appeals, the YMCA, and the state struggle to articulate a rational basis for the classification. I glean three arguments from their writings. First, they seem to argue that if non-profits need not purchase liability insurance, they can charge the public less for the opportunity to use their land. Lower charges, they contend, will enable more people to use the land, in keeping with the legislative policy of encouraging public use of recreational land.

Second, the proponents of the classification look to the "charitable" nature of non-profit activities as the legislature's basis for drawing the distinction between

---

[1] Immunity is granted to landowners who levy no charge or no more than a minimal charge. Section 895.52(6), Stats. 1991–92.

for-profit and non-profit organizations. Under their rationale, if non-profits that work with the "underprivileged" incur liability for activities on recreational land, they may be less likely to invest in recreational land and thus will make fewer facilities available to those they are supposed to serve. In addition, they argue that income derived from recreational lands can lend financial support to the other charitable activities of the non-profit landowner and the legislature intended to foster this goal.

Third, the proponents contend that because non-profits are not organized to make a profit, they derive no more than a minimal pecuniary benefit from opening their land to the public, regardless of the fee charged. Immunizing non-profits from liability, they assert, is therefore in keeping with the legislative policy of immunizing those recreational landowners who do "not derive more than a minimal pecuniary benefit." 1983 Wis. Act. 418, sec. 1.

I.

I first examine the contention that freeing non-profits from the cost of liability insurance potentially increases public use of recreational land. This argument may be true. However, it applies equally to for-profit corporations. Thus it cannot be used to explain the legislature's disparate treatment of non-profit and for-profit organizations in sec. 895.52.

II.

I next examine the proposition that the legislature meant to encourage the good works of non-profits by freeing them from the expense of buying liability insur-

ance. This argument seems to resurrect the long-discredited doctrine of charitable immunity.[2]

Wisconsin courts grounded charitable immunity on the public policy that charities should be free from liability because they perform the "quasi-public function in ministering to the poor and sick without any pecuniary profit to themselves." *Morrison v. Henke,* 165 Wis. 166, 170, 160 N.W. 173 (1917). The court went on to differentiate non-profit and for-profit entities as follows:

> Since the hospital derives no profit from its work and since it is founded for the sole purpose of conserving the health and life of all who may need its aid, and since it ministers to those who cannot pay as well as those who can, thus acting as a good Samaritan, justice and sound public policy alike dictate that it should be exempt from liability attaching to masters whose only aim is to engage in enterprises of profit or of self-interest.

*Morrison,* 165 Wis. at 170.

In the early 1960s, however, the doctrine of charitable immunity was abandoned by this court and has not been resurrected by the legislature. In *Kojis v. Doctors Hospital,* 12 Wis. 2d 367, 372, 107 N.W.2d 131 (1961), this court explained that hospitals "are now larger in size, better endowed, and on a more-sound economic basis. Insurance covering their liability is available and prudent management would dictate that such protection be purchased." Moreover, in *Widell v. Holy Trinity Catholic Church,* 19 Wis. 2d 648, 656, 121 N.W.2d 249 (1963), the court questioned the justifica-

---

[2] The circuit court's rationale, quoted in the majority opinion at 888, relies on the profit being used for "charitable purposes."

tion of denying recovery to "the innocent sufferer of injuries" caused by the negligence of a charitable or religious institution in order to benefit the many. "When an institution owes a duty of care to another and . . . no matter how lofty the purpose or motive, injures another . . . the breach of duty ought not to be excused on the grounds of the laudable purpose or the public benefit of the activity causing the injury." *Widell,* 19 Wis. 2d 648, 656 (1963).

The court abandoned charitable immunity more than 30 years ago partly because of the availability of liability insurance; today the court is asked to conclude that the legislature has resurrected the doctrine because of the cost of liability insurance.

The proponents ask this court to accept as the legislature's rational basis for the classification that in order to enjoy outdoor recreation, the "underprivileged" must forsake their right to be compensated for negligently inflicted injuries.

Recreational immunity is a creation of the legislature. If the proponents could point to a coherent legislative policy of protecting non-profits from liability for recreational activities, a rational basis might exist for the classification under the recreational immunity statute. No one has articulated, nor can I perceive, such a policy. While non-profits are immune from suit for activities on recreational land, they are not generally immune from suit for torts connected with recreational activity in a building. Section 895.52(1)(f), Stats 1991–92. Thus the YMCA could be liable for a tort growing out of indoor but not outdoor recreation. Indeed, non-profits can be liable for any tort except a tort arising from outdoor recreation. This inconsistency illustrates that there is no coherent legislative policy to

protect non-profits from liability in torts connected with recreational activities.

## III.

The proponents of the statute proffer a third argument in favor of the rationality of sec. 895.52's distinction between for-profits and non-profits who charge for use of recreational land. They assert that by definition a corporation organized as a non-profit derives no more than minimal pecuniary benefit from opening its land. However, this argument does not withstand analysis.

The essential characteristic of non-profit corporations is that they cannot distribute their profits or net earnings to their directors, officers or members. Jane C. Schlicht, *Piercing the Non-Profit Corporate Veil,* 66 Marq. L. Rev. 134, 136 (1982). However, this prohibition against distributing their earnings as dividends does not mean that non-profit corporations must operate in the red. On the contrary, there is nothing to prevent a non-profit from showing an excess of revenues over expenses on its annual operating statement, or building its net worth over time. In addition, a non-profit corporation need not have a charitable purpose. With limited exceptions, corporations may be organized under Chapter 181 "for any lawful purpose whatever." Section 181.03, Stats. 1991–92.

As the court of appeals noted, the net worth of the YMCA of Metropolitan Milwaukee at the end of 1988 exceeded $28 million. In 1990, its total revenues exceeded $14 million and it realized a surplus of $110,041. The YMCA's 1990 annual report described camping as a "revenue growth leader." The pecuniary benefit that the YMCA derived from camping was enhanced, according to the report, by the organiza-

tion's "[e]xpense savings in . . . public liability insurance."

The purpose of the recreational immunity statute is to encourage landowners to open their land at little or no charge. Section 895.52(6)(a). Granting immunity to a non-profit that charges more than a minimal amount contravenes the statute's very purpose.

Tracy Szarzynski's mother paid $362 for two weeks of camping at Camp Minikani, yet the legislature denies recovery for an allegedly negligently inflicted injury because of the non-profit corporate structure of the owner of the camp.

It makes little sense to argue that the legislature intended a non-profit such as the YMCA to be immune from suit simply because its profits are not distributed as dividends, while a nearby farmer who charges campers on his land more than a minimal fee is liable in tort. As I have explained, I see no rational basis for this distinction. I agree with the court of appeals that absent such rational basis the statute is unconstitutional. Accordingly, I dissent.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN and Justice WILLIAM A. BABLITCH join this dissent.